IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALLRICH JEAN, (as Administrator for The ESTATE OF ARMANI FAISON).,** <br><br> **Plaintiff,** <br> v. <br><br> **CITY OF PHILADELPHIA, et al.** <br><br> **Defendants.** | CIVIL ACTION <br><br> No. 22-cv-433 |

**DEFENDANTS CITY OF PHILADELPHIA, PRISON COMMISSIONER BLANCHE CARNEY, WARDEN NANCY GIANETTA, AND WARDEN MICHELE FARRELL'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEFING IN OPPOSITION TO THE MOTION TO DISMISS**

Pursuant to this Court's February 14, 2023, Order (*see* ECF No. 44), Defendants City of Philadelphia, Prison Commissioner Blanche Carney, Warden Nancy Gianetta, and Warden Michele Farrell (hereafter "Defendants") submit this response to Plaintiff's Supplemental Briefing in Opposition to the Motion to Dismiss (ECF No. 46, cited hereafter as "Pl.'s Supp. Br.").

**ARGUMENT**

As Defendants noted in both their opening Memorandum and Reply, in *Diaz v. City of Philadelphia*, this Court dismissed a municipal liability claim premised on substantially the same allegations of understaffing as those pled by Plaintiff in this case. *See* Defs.' Mem, ECF No. 29, at 9; Defs.' Reply, ECF No. 45, at 1 (citing *Diaz v. City of Phila.*, No. CV 22-3286, 2022 WL 16553385, at *5 (E.D. Pa. Oct. 31, 2022) (Robreno, J.)). In *Diaz*, this Court held that the plaintiffs' municipal liability claim—premised on alleged understaffing—failed to state a

1

plausible claim, because the complaint alleged neither an official policy nor an unofficial custom of understaffing the prisons. *Diaz*, 2022 WL 16553385, at *5. As this Court explained:

> Plaintiffs have not alleged that the failure to hire was a <u>course of conduct</u>. Plaintiffs have alleged that the City has taken some measures that might make the occupation less desirable. *But Plaintiffs have alleged no facts that indicate that there was a particular course of conduct in which, for instance, the hiring body for the Philadelphia Department of Prisons chose to hire fewer prison guards than were required.*

2022 WL 16553385, at *5 (underlining in original, italics added).

Plaintiff in this case has not attempted to distinguish his Complaint from that at issue in *Diaz*. Instead, Plaintiff contends that *Diaz* was incorrectly decided because "Plaintiff is not required to plead that the understaffing was the result of a particular course of conduct chosen by the City." Pl.'s Supp. Br. 4. Plaintiff explains that "[w]hile it is generally true municipal liability only attaches where a deliberate choice to follow a course of action is made among various alternatives, that requirement is not absolute," as "a custom 'may also exist where the policymaker has failed to act affirmatively at all.'" *Id.* (quoting *Natale v. Camden Cnty. Corr. Fac.*, 318 F.3d 575, 584 (3d Cir. 2003)).

It is true enough that a municipal liability claim need not be premised on an *affirmative* act; it may also be premised on a municipal "policymaker['s] . . . fail[ure] to act affirmatively at all." *Natale*, 318 F.3d at 584. This distinction is typically made in the context of municipal liability claims premised on a municipality's alleged failure to train, supervise, or discipline its employees. *See Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (noting that this "failure-to" theory of liability "arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its [employees]"). But importantly, even under such a "failure-to" theory of liability, the alleged failure on the part of the municipality must "reflect[] a *deliberate* or *conscious choice*." *Id.*

2

(quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (emphasis added)) (describing such a theory of liability as "equally demanding" and as bearing a "close relationship" with a theory of liability premised on an unconstitutional "custom"). Thus, to give rise to municipal liability, even an alleged failure to act must reflect more than mere *negligence* on the part of a municipality—indeed, it is not enough to allege that the City *should* have done more. Rather, an alleged failure to act must evince a *deliberate* or *conscious* choice, one made with "*deliberate* indifference to the constitutional rights of those affected." *Forrest*, 930 at 106 (emphasis added).

      This Court in *Diaz* did not hold to the contrary. Rather, consistent with the Third Circuit's decision in *Forrest*—which *Diaz* quoted in establishing the relevant requirements for municipal liability—this Court concluded that merely pleading "knowledge of difficulties hiring and retaining enough employees is not the same as [pleading] *a policy to routinely hire* fewer Corrections Officers than are needed to maintain safe premises." *Diaz*, 2020 WL 16553385, at *4–5 (emphasis added). As this Court explained, while the "Plaintiffs [in *Diaz*] allege[d] that [the understaffing of the prisons] [was] the result of a '*deliberate* or *conscious*' policy, . . . Plaintiffs only point[ed] to statements by high-ranking municipal officials and events evincing knowledge or constructive knowledge of understaffing," which "overlook[s] that the City has no control over personal decisions of individual employees whether to show up for shifts, not show up for shifts, or quit their jobs as prison guards." *Id.* at *5 (emphasis added). In other words, this Court held—consistent with *Forrest*—that the plaintiffs had failed to plausibly plead a "deliberate or conscious choice" on the part of the City in failing to hire fewer corrections officers than were required, because the plaintiffs did not account for factors *beyond the City's control*—such as absenteeism and resignations on the part of corrections officers. And the same is true here: like

3

the plaintiffs in *Diaz*, Plaintiff's own complaint simply alleges the existence of staffing vacancies and unfilled shifts, and points to factors beyond the City's control such as staff absenteeism. *See, e.g.*, Am. Compl., ECF No. 25-1, ¶ 57 (alleging that "64% of staff called out on Mother's Day weekend" in 2021); *id.* ¶ 56 (citing *Philadelphia Inquirer* article reporting that "there were shifts where as many as 14 of the 15 workers [of the Philadelphia Department of Prisons] abandoned their shifts").[1] Under the standards for municipal liability set out in *Forrest*, that is insufficient to state a plausible claim that the City made "a deliberate or conscious choice" in failing to staff its prisons with fewer corrections officers than were required. *Forrest*, 930 F.3d at 105.

Plaintiff further contends that Defendants' position (and thus this Court's decision in *Diaz*) is incorrect because "where a municipality has an affirmative constitutional obligation"—such as an obligation to protect a detainee from harm at the hands of another detainee—"excuses cannot justify the failure to comply with the obligation." Pl.'s Supp. Br. 6 (citing *Ancata v. Prison Health Servs.*, 769 F.2d 700, 705 (11th Cir. 1985) for the proposition that "lack of funds cannot justify an unconstitutional lack of competent medical care and treatment for inmates"). To be sure, a municipality cannot refuse to take actions that are *within its control* and that are *obviously necessary* to meet its constitutional obligations, simply because those actions are

---

[1] Plaintiff contends in his Supplemental Brief that "the City's claim that the inadequate staffing levels were due to factors beyond its control is disingenuous at best considering the representations it made in the *Remick* litigation," citing a filing in that litigation for the proposition that the "City stated that it implemented a plan in April 2021 (a month after [Plaintiff's decedent's] death) to overcome the inadequate staffing levels by altering shift hours and beginning rolling recruitment and hiring." Pl.'s Supp. Br. 7. But Plaintiff's own Amended Complaint—which controls for purposes of the present motion to dismiss—lacks specific allegations about what was known to municipal policymakers regarding the necessity or efficacy of "altering shift hours" or "rolling recruitment and hiring" before the *Remick* litigation. *See generally* Am. Comp., ECF No. 25-1, at ¶¶ 71–73 (discussing the *Remick* litigation). Instead, the Amended Complaint contains allegations—including those cited above—discussing the role played by absenteeism, resignations, and other factors outside of the City's control.

expensive or difficult. But that is quite different from contending that a municipality can be found to be deliberately indifferent for conduct beyond its control, or for failing to take actions that are not obviously necessary to satisfy its constitutional obligations. *Cf. Parkell v. Danberg*, 833 F.3d 313, 339 (3d Cir. 2016) (granting summary judgment to companies responsible for providing medical services to inmates where the companies' inability to provide certain medical services was due to logistical issues out of its control, and explaining that "there is a difference between actors who are actually responsible for . . . logistical constraints (or capable of remedying them) and actors who are not," and that the mere existence of a logistical problem "[d]id not mean that [the companies] w[ere] indifferent to the problem"). Far from holding that "excuses" can "justify [a municipality's] failure to comply with [a constitutional] obligation," Pl.'s Supp. Br. 6, this Court in *Diaz* merely recognized—again, consistent with *Forrest*—that a plaintiff cannot establish that a municipality's conduct amounts to "a deliberate or conscious" choice where the plaintiff relies on the actions of individual municipal employees over which the municipality has no control. *See Diaz,* 2020 WL 16553385, at *5.

Finally, as with the cases cited in Plaintiff's Opposition,[2] the cases cited in Plaintiff's Supplemental Brief are not in tension with *Diaz*—which, as discussed above, simply applied the Third Circuit's standards for municipal liability as set out in *Forrest* and other Third Circuit decisions. *See* Pl.'s Supp. Br. 6–7 (citing out-of-circuit cases as indicative that courts have not "allowed the municipality to escape their constitutional obligation to protect detainees for

---

[2] The cases cited in Plaintiff's Opposition are addressed in Defendants' Reply. *See* Defs.' Reply, ECF No. 45, at 3–5.

5

excuses such as limited funds or lack of control over employees showing up for work").[3] But in several of these cases it was quite clear—unlike in *Diaz*—that the municipal decisionmaker *did* make a conscious and deliberate decision to staff its facility at a level that the plaintiff alleged was constitutionally inadequate.

For example, in *Prince v. Sheriff of Carter County*, 28 F.4th 1033, 1049–1051 (10th Cir. 2022), the court held that summary judgment was not appropriate on a municipal liability claim premised, in part, on a jail's failure to hire adequate medical personnel, concluding that there was a genuine dispute of fact on the claim. But there, the record indicated that the jail "did not consistently employ a licensed physician" and "the only jail employee who had any medical training was" a single nurse who worked "five days a week from 8:00 a.m. to 4:00 p.m." and who "was known to yell at staff when contacted outside of work hours," leaving "untrained jail guards" to make decisions as to when to transport detainees to the hospital after work hours. *Id.* 1039, 1049–50. Moreover, as to the lack of a physician in *Prince*, while the defendant-sheriff "attributed the lack of a physician to the county's inability to locate qualified candidates," the summary judgment record "reflect[ed] limited efforts to do so," as the hiring of the physician was delegated to the jail's single nurse who "interviewed only two physicians." *Id.* at 1049–50. Nothing in *Prince* suggests that absenteeism, resignations, or other factors beyond the municipality's control were responsible for the jail's medical staffing levels—as the complaints in *Diaz* and this case do. If that was not the case, *Prince* presumably would have come out differently. Nothing in *Prince,* therefore, is inconsistent with *Diaz*.

---

[3] And as with the cases cited in Plaintiff's Opposition, while Defendants maintain that the cases cited in Plaintiff's Supplemental Brief are consistent with this Court's decision in *Diaz*, it bears noting, in any event, that the cases are not binding on this Court.

Likewise, in *Paugh v. Uintah County*, No. 17-cv-1249, 2020 WL 4597062, at *39–40 (D. Utah Aug. 11, 2020), the court denied summary judgment on the plaintiffs' claim that a jail "operate[d] with an understaffed medical operation, including having no licensed, certified, or trained medical professionals on-site at the Jail." But there, similar to *Prince*, the summary judgment record showed that the only nurse on staff went on maternity leave, and despite "kn[owing] for months that its only nurse was going on maternity leave," the jail came up with no plan except to train a few corrections officers as "medical officers" despite these officers' lack of "any medical certifications, licensing, or training." *Id.* at *39–40. As with *Prince*, nothing in *Paugh* suggests that the jail's medical staffing level was the result of anything other than its deliberate decisions.

Plaintiff also cites *Burke v. Regaldo*, 935 F.3d 960, 1001 (10th Cir. 2019). There, the court affirmed a jury's verdict in favor of a plaintiff on a municipal liability claim premised, in part, on a jail's understaffing of its medical operations. *Id.* But there the trial record included a report from a correctional consultant whose advice the jail itself had sought out, which consultant issued a report recommending increased staffing and "stated that the lack of well-qualified nurses required better pay." *Id.* at 986, 999. Yet "there was no evidence the jail acted on these recommendations in any meaningful way." *Id.* at 999. Here, by contrast, there is no allegation in the complaint that the alleged failure to hire correctional officers was the result of inadequate pay. And likewise, nothing in *Burke* suggests that the trial record included—as the complaint does here—evidence that factors outside of the municipality's control, such as absenteeism or resignations, affected the applicable staffing levels.

The remaining cases cited by Plaintiff say little about the cause of the alleged understaffing at issue. But that is likely because it was presumed—reasonably in each of the

cases—that the cause was *not* factors beyond the municipality's control, but rather was the result of a conscious or deliberate choice to maintaining staffing at that level. *See Bond v. Nueces County, Texas*, No. 20-40050, 2022 WL 4595000, at *9 (5th Cir. Sept. 30, 2022)[4]; *Morgan v. Bd. of Cnty. Commissioners of Oklahoma Cnty.*, No. 08-cv-1317, 2010 WL 11508854, at *8–9 (W.D. Okla. Mar. 11, 2010); *Meekins v. City of Oberlin*, No. 107636, 2019 WL 3046126, at *11 (Ohio Ct. App. July 11, 2019).

In sum, as this Court explained in *Diaz*, in order to prevail on a municipal liability claim premised on alleged understaffing, Plaintiff must establish that the understaffing was the result of municipal conduct—be it an official policy, an unofficial custom, or a deliberate failure to act—that evinces a deliberate or conscious choice on the part of the municipality. *See Diaz*, 2022 WL 16553385, at *4–5. The *Diaz* decision simply applied, and was fully consistent with, the applicable Third Circuit case law setting out the standards for municipal liability. *See Forrest*, 930 F.3d at 105. Like the plaintiffs in *Diaz*, Plaintiff here has failed to satisfy those standards, as the complaint alleges no official policy of understaffing, and has not alleged facts that plausibly support the conclusion that the understaffing was the result of a "deliberate or conscious" choice on the part of the City.

## **CONCLUSION**

For the foregoing reasons, and those asserted in Defendants' Partial Motion to Dismiss, and their opening Memorandum and Reply in support of the same, Defendants City of Philadelphia, Prison Commissioner Blanche Carney, Warden Nancy Gianetta, and Warden Michele Farrell respectfully request that the Court grant their Partial Motion to Dismiss and dismiss Plaintiff's claims against them for failure to state a claim.

---

[4] *Bond* is discussed in detail in Defendants' Reply. *See* Defs.' Reply, ECF No. 45, at 4–5.

Date:  February 28, 2023    Respectfully submitted,

/s/ Adam R. Zurbriggen
Adam R. Zurbriggen
Deputy City Solicitor
Pa. Attorney ID No. 331169
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5114 (Phone)
215-683-5397 (Fax)
adam.zurbriggen@phila.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALLRICH JEAN, (as Administrator for The ESTATE OF ARMANI FAISON).,** | : <br> : <br> : <br> : **CIVIL ACTION** <br> : <br> : **No. 22-cv-433** |
| **Plaintiff,** | |
| v. | |
| **CITY OF PHILADELPHIA, et al.** | |
| **Defendants.** | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, the foregoing Response to Plaintiff's Supplemental Briefing in Opposition to the Motion to Dismiss was filed via the Court's electronic filing system and is available for viewing and downloading.

Date: February 28, 2023

/s/ *Adam R. Zurbriggen*
Adam R. Zurbriggen
Deputy City Solicitor
Pa. Attorney ID No. 331169
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5114 (Phone)
215-683-5397 (Fax)
adam.zurbriggen@phila.gov