```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ALLRICH JEAN,                  :    CIVIL ACTION
                               :    NO. 22-433
         Plaintiff,            :
                               :
    v.                         :
                               :
CITY OF PHILADELPHIA, et al.,  :
                               :
         Defendants.           :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                JULY 7, 2023

**I.   INTRODUCTION**

This is a § 1983 case based on the theory that the understaffing of a City of Philadelphia prison was the cause of the death of an inmate at the hands of another inmate. The Court recently visited a factually similar case and addressed the same legal issues.[1]

Plaintiff Allrich Jean, as administrator of the estate of his son, Armani Faison, under Pennsylvania's Wrongful Death and Survivorship statutes, 42 PA. CONS. STAT. §§ 8301, 8302 (2022), brings multiple federal § 1983 claims against Defendants City of Philadelphia ("the City"), Warden Michele Farrell, Warden Nancy

---

[1] See Diaz v. City of Philadelphia, --- F. Supp. 3d ---, No. 22-3286, 2023 WL 3011340, at *3 (E.D. Pa. April 20, 2023).

Gianetta, Prison Commissioner Blanche Carney, Carlos Barbour, and Steven Carter (collectively, "Defendants").

Before the Court is the City's, Warden Michele Farrell's, Warden Nancy Gianetta's, and Prison Commissioner Blanche Carney's (collectively, "Moving Defendants") Motion to Dismiss (ECF No. 29), Plaintiff's Response in Opposition (ECF No. 32), and the Moving Defendants' Motion for Leave to File a Reply Brief in Support of their Motion (ECF No. 36).[2] Moving Defendants argue that Plaintiff's § 1983 claims fail to allege sufficient facts to state a claim that the City, Commissioner Carney, Warden Gianetta, or Warden Farrell can be held liable for the alleged constitutional violation.

## II. BACKGROUND[3]

Plaintiff alleges that his son, Armani Faison ("Decedent"), was raped to death by inmate Kevin Massey ("Massey") while incarcerated at the Curran-Fromhold Correctional Facility ("CFCF"). See Am. Compl. ¶ 1, ECF No. 25-1. Plaintiff claims that Decedent's death was a "predictable result of the City's consistent practice of massively understaffing its jails" as

---

[2] Moving Defendants previously filed a partial motion to dismiss on Plaintiff's state negligence claim. The Court granted the motion. See ECF Nos. 15, 19.

[3] The facts recited are drawn from the Plaintiff's complaint and taken as true. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

2

"the block to which [Decedent] was assigned was intentionally left completely unattended by prison staff throughout the night," and thus brings this action against "Defendants for their failure to protect [Decedent] from known and obvious risks which resulted in his rape and murder." Id. ¶¶ 2, 3.

On March 21, 2021, Massey sexually assaulted another inmate, and this assault was reported to Lt. Murray, Sgt. Dekeyser, and Sgt. Barbour. Id. ¶¶ 18, 19. After being arrested on March 24, 2021, Decedent was placed into a cell with Massey, even though Social Worker Douglas Ford evaluated Decedent and concluded that he was engaging in "bizarre Behaviors, which may aggravate others putting his safety in danger," and in violation of Prison Policy because Massey was "assigned segregation status." Id. ¶¶ 20, 21, 25, 26. The fatal assault occurred on March 27, 2021 while Decedent was in his jail cell with Massey. Id. ¶¶ 30, 46.

Plaintiff alleges that only one officer, Defendant Steven Carter, was assigned to the unit on the night of the fatal assault and that this violated the City's post assignment and its contract with the corrections officer's union, which required that two guards be staffed at all times on each unit. Am. Compl. ¶¶ 32, 34, ECF No. 25-1. On the night of the assault, Defendant Carter failed to conduct any tours of the unit and eventually left the unit unsupervised with the permission of

3

Defendant Barbour. Id. ¶ 35. Defendant Barbour was aware the cell block was left unguarded but "declined to assign another officer to guard the block in violation of Prison policy." Id. ¶ 36. The cell block was unattended and unmonitored for the extent of the assault on Decedent, and "[b]oth Defendant Barbour and Defendant Carter were disciplined by the City for failing to ensure the cell block was guarded." Id. ¶¶ 38, 39.

The Complaint alleges that "[f]or years, the Philadelphia Department of Prisons has displayed a consistent and systemic failure to maintain proper staffing practices, resulting in a significant understaffing leading to an increase in inmate deaths directly related to the lack of supervision." Id. ¶ 49. Plaintiff further alleges that Defendants Commissioner Carney, Warden Gianetta, and Warden Farrell "have long been aware of the dangers created by their failure to maintain proper staffing." Id. ¶ 50.

The Complaint alleges that the City failed to staff the Philadelphia Department of Prisons ("PDP") at levels necessary for the safety of inmates and staff in 2019, which led to THE skyrocketing of violence and murders in the PDP facilities, culminating in five murders between August 2020 and May 2021, more than in the previous eight years combined. Id. ¶¶ 52-55. Plaintiff alleges that the City was aware in 2019 and 2020 of the insufficient staffing levels as indicated by the

4

Department's own staffing data from 2019 onward, id. ¶ 54, the Controller's report, id. ¶¶ 52-54, reports filed by the City in Remick v. City of Philadelphia litigation, id. at ¶¶ 74-78; see also E.D. Pa. Civ. No. 20-cv-1959, ECF No. 45 at p.5 [hereinafter "Remick litigation"]), and the City's admission to violating a federal court order blaming staffing shortages, id. ¶ 78.

Plaintiff brings state and federal claims arising from the death of his son. Under state law, Plaintiff brings a wrongful death and survival action, pursuant to 42 Pa. Cons. Stat. §§ 8301 and 8302 respectively, seeking damages for the loss of future services, support, society, comfort, affection, guidance, contributions, loss of earnings, loss of earning power, pain and suffering, and emotional distress. Under federal law, Plaintiff brings § 1983 claims against Defendants.

### III. LEGAL STANDARD

The party moving for dismissal under Rule 12(b)(6) bears the burden of showing that the opposing party has not stated a claim. See Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). To meet this burden, a moving party must show that the complaint does not contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A plaintiff need not make out a prima facie case in the complaint in order to survive a motion to dismiss, however. Connelly v. Lane Construction Corp, 809 F.3d 780, 788-89 (3d Cir. 2016) (distinguishing between pleading requirements and evidentiary standards); Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) ("[A]n evidentiary standard is not a proper measure of whether a complaint fails to state a claim."). But, while a plaintiff need not have the correct legal theory or make out a prima facie case in the complaint, a plaintiff must allege facts to show that discovery will reveal sufficient support of each element of the claim. See Comcast Corp v. NAACP, 140 S. Ct. 1009, 1014-15 (2020) ("[W]hile the materials the plaintiff can rely on to show causation may change as a lawsuit progresses from filing to judgment, the burden itself remains constant.").

At this stage, a court must accept a plaintiff's factual allegations as true, and draw all reasonable inferences in a plaintiff's favor. Bell Atl. Corp., 550 U.S. at 555-56. But, the Court must disregard any conclusory allegations in the complaint and instead look to the well-pleaded factual allegations. Iqbal, 556 U.S. at 678-79.

## IV. DISCUSSION

Plaintiff brings federal claims under § 1983 for violations of Decedent's rights under the Fourteenth Amendment as a pretrial detainee subjected to allegedly unconstitutional

6

conditions. See Bell v. Wolfish, 441 U.S. 520, 535 (1979) (attributing the constitutional protections for state pretrial detainees against unlawful punishment to the Due Process Clause of the Fourteenth Amendment); Hubbard v. Taylor, 399 F.3d 150, 163-68 (3d Cir. 2005) (discussing the applicability of the Fourteenth Amendment to pretrial detainees under Bell v. Wolfish).

### A. Count I - Fourteenth Amendment Violation Against Individual Defendants

As the Court recently noted in Diaz:

> To make out a § 1983 claim against an individual municipal officer, a plaintiff must show that "the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Carroll v. Carman, 574 U.S. 13, 16 (2014) (per curiam) (citation omitted). Federal courts have recognized that prison officials have a duty to protect inmates. See, e.g., Farmer v. Brennan, 511 U.S. 825 (1994) (requiring a showing of substantial risk of harm to an inmate, subjective knowledge of the risk on the part of the officers, and deliberate indifference of that risk, in order to support a § 1983 claim for failure to protect).

Diaz, 2023 WL 3011340, at *3.

Plaintiff alleges that the Individual Defendants failed to protect Decedent by:

> a. Failing to maintain appropriate staff in the inmate housing units;
> b. Placing [Decedent] in a cell with inmate Kevin Massey despite knowledge of his sexual assault of his previous cellmate;
> c. Failing to have a corrections officer on [Decedent]'s cell block;

7

> d. Failing to conduct regular checks of the cells housing inmates for several hours;
> e. Failing to respond to repeated asks for help by [Decedent] and neighboring inmates;
> f. Failing to adequately protect [Decedent] from fatal injuries while in their custody and control; and,
> g. Willfully subjecting [Decedent] to repeated physical and psychological torture and ultimately his death, described herein.

Am. Compl. ¶ 144, ECF No. 25-1.

### 1. Lack of Personal Knowledge

Plaintiff alleges that Commissioner Carney, Warden Gianetta, and Warden Farrell were "aware of the dangers created by their failure to maintain proper staffing." Id. ¶ 50. Defendants claim that "the Amended Complaint does not allege that Commissioner Carney, Warden Gianetta, or Warden Farrell were personally involved in, or aware of, the specific risk that [Decedent] would be attacked by his cellmate." Mot. to Dismiss 5, ECF No. 29.

Plaintiffs have not met their burden in showing that these Individual Defendants violated the Constitution through their own actions because there is no evidence that the Moving Individual Defendants had notice or a reason to suspect that the assault would occur. See Brown v. Smith, No. 21-3127, 2022 WL 2383609, at *2 (3d Cir. July 1, 2022) (holding that where a § 1983 claim arises out of inmate-on-inmate violence, a plaintiff can demonstrate deliberate indifference by showing that an "official knows an inmate faces 'an excessive risk of harm' from

8

another prisoner but does nothing to prevent the assault," or, by showing that "when an attack occurs, [an official] has 'a realistic and reasonable opportunity to intervene' but 'simply refuse[s] to do so.'" (quoting Bistrian v. Levi, 696 F.3d 352, 369 (3d Cir. 2012), abrogated on other grounds as recognized in Mack v. Yost, 968 F.3d 311, 319 n.7 (3d Cir. 2020) and then Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002)))[4]. Although the Complaint alleges that Massey was placed on segregated status, there are no facts that allege that the Moving Individual Defendants were on notice of that fact. Moreover, Plaintiff did not allege "that the persons directly involved in this treatment or the other treatment of which [he] complains were implementing policies that [the Moving Individual Defendants] had promulgated or were following existing practices that they countenanced likely to result in the violation of inmates' constitutional rights." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 223 (3d Cir. 2015). As the Third Circuit has recently stated, Plaintiff has to "identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must

---

[4] Plaintiff has also not likely succeeded in providing plausible allegations that the individual Defendants did nothing to prevent the assault, or, when given the opportunity to intervene, did nothing. Plaintiff does not allege that the individual Defendants were "expressly advised of the risk of harm and the procedures designed to prevent that harm and proceeded to violate those procedures." Kedra v. Schroeter, 876 F.3d 424, 441 (3d Cir. 2017).

9

establish a link between the supervisor, the act, and the injury." Christmann v. Link, No. 22-1060, 2023 WL 1879241, at *2 (3d Cir. Feb. 10, 2023) (quoting Chaviarraga, 806 F.3d at 227). Plaintiff has not met that requirement here.

### 2. Responsibility for Hiring

As stated above, there are no facts plead that give rise to the reasonable inference that the Moving Individual Defendants were responsible for hiring Corrections Officers ("COs") or otherwise working to retain or retain COs. Although the Complaint alleges that Commissioner Carney was "the final policymaker on correctional officer staffing levels within the Philadelphia Department of Prisons," the newspaper article cited by Plaintiff quotes Controller Rynhart as saying the opposite-- indicating that Mayor Kenney, rather than the named Individual Defendants in this case, has the ultimate hiring power and responsibility.

Accordingly, Plaintiff has not alleged sufficient facts to state a § 1983 claim against Individual Moving Defendants. The claims comprising Count I of the Complaint will be dismissed.

### B. **Count II- Fourteenth Amendment Municipal Liability Against the City**

To survive the pleading stage in a § 1983 claim against the City, Plaintiffs must allege that (1) a constitutionally protected right has been violated and (2) the alleged violation

10

resulted from a municipal policy or custom that exhibits deliberate indifference to rights of citizens. Monell v. Dep't Soc. Servs. of City of New York, 436 U.S. 658, 694–95 (1978). The City cannot be liable under § 1983 on a theory of respondeat superior. Id. at 691. As previously noted by the Court:

> There are two general ways that a plaintiff can raise a § 1983 claim against a municipality: (1) that an unconstitutional policy or custom caused their injuries, or, (2) that the plaintiff's injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" Forrest v. Parry, 930 F.3d 93, 105 (3d Cir. 2019) (quoting Monell, 436 U.S. at 694). A custom or policy does not require a plaintiff to "demonstrate an unconstitutional policy or custom of, or amounting to, deliberate indifference"; however, a failure or inadequacy claim does require such a showing. Forrest, 930 F.3d at 107.

Diaz, 2023 WL 3011340, at *4.

As further stated in Diaz:

> When bringing a custom or policy claim, a plaintiff must "identify the challenged policy, attribute it to the city itself, and show a causal link between the execution of the policy and the injury suffered." Losch v. Borough of Parkesburg, Pennsylvania, 736 F.2d 903, 910 (3d Cir. 1984); Forrest, 930 F.3d at 105 ("[A] plaintiff presenting an unconstitutional policy must point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject. And, if alleging a custom, the plaintiff must evince a given course of conduct so well-settled and permanent as to virtually constitute law." (citing Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019))).
>
> To allege a custom, a plaintiff typically must demonstrate that there was a pattern of similar constitutional violations. See Connick v. Thompson, 563 U.S. 51, 54 (2011) (holding that a municipal division

could not be held liable under § 1983 for failure to train based on a single constitutional violation). Further, a custom claim "requires proof of knowledge and acquiescence by the decisionmaker." McTernan v. City of York, Pennsylvania, 564 F.3d 636, 658 (3d Cir. 2009). Acquiescence may be inferred where a plaintiff alleges that "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990).

To allege that the challenged custom or policy was the cause of the deprivation of constitutional rights, a plaintiff must at least show that "occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." Id. (quoting Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987)). Because a municipality cannot be vicariously liable for the actions of the individual officers, a plaintiff must allege sufficient facts to show that the municipality's custom or policy, independent of the actions of the individual officers, was a legal cause of the harm. See Anderson v. City of Atlanta, 778 F.2d 678, 686 (11th Cir. 1985); see also City of Canton, Ohio v. Harris, 489 U.S. 378, 391 (1989) (directing the factfinder to consider, as a part of the causation inquiry, whether the injury would have been avoided if the policy at issue were changed).

Id.

Here, Plaintiff argues that, due to the policy of "understaffing" of Philadelphia prisons, inmates have been harmed, and that the City is aware of both the "understaffing" and the risk of harm to inmates. However, "[m]ere knowledge of difficulties hiring and retaining enough employees is not the same as an intentional decision to routinely hire fewer [COs] than are needed to maintain safe premises." Diaz v. City of Philadelphia, No. 22-3286, 2022 WL 16553385, at *5 (E.D. Pa.

Oct. 31, 2022). Although Plaintiff alleges that understaffing is a result of a "deliberate of conscious" policy, high ranking city officials' knowledge or constructive knowledge of understaffing is insufficient to support that allegation. Id. This is because "the City has no control over the personal decisions of individual employees whether to show up for shifts, not show up for shifts, or quit their jobs as prison guards." Id. Thus, Plaintiff has not alleged sufficient facts to support a § 1983 policy claim.

Plaintiff likely has not alleged sufficient facts to support a "custom" claim either because Plaintiff has not alleged that the understaffing was a course of conduct. Plaintiff has alleged that the City has taken some measures that might make the occupation less desirable. See Am. Compl. ¶ 69 ("On November 4, 2004, then-Commissioner Leon King implemented a limited overtime policy for PDP officers, sparking significant under-staffing."). But Plaintiff has alleged no facts indicating that there was a particular course of conduct in which the hiring body for the Philadelphia Department of Prisons chose to hire fewer prison guards than were required. Even making all inferences in Plaintiff's favor and taking all facts alleged as true, Plaintiff has not pled sufficient facts to show that discovery could lead them to state a claim for municipal

13

liability on a custom or practice theory. See Diaz, 2023 WL 16553385, at *4-*6.

It is true that a showing of "acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity" may also support a custom or policy claim. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 485-87 (1986) (White, J., concurring)). However, Plaintiffs have not alleged that Defendants have "acquiesced" or "given up" on hiring sufficient COs to correct the understaffing. Rather, as noted in Diaz, "that numerous City officials have commented that the prisons remain understaffed, also suggests the opposite: that City officials recognize the problem and are attempting to find a way to hire and retain more COs under the present difficult circumstances." Diaz, 2023 WL 16553385, at *7.

## V. CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss will be granted. Plaintiff's claims will be dismissed without prejudice and with leave to amend.

An appropriate order follows.